## THE FLAT SWAMP, LOCK'S CREEK and EVAN'S CREEK CANAL COMPANY *v.* D. A. McALISTER.

The appointment of appraisers to assess damages, &c., by the County Commissioners, upon the petition of the Flat Swamp, Lock Creek and Evan's Creek Canal Company, under the provisions of the act of 1871-'72, (in which is incorporated the first eleven sections of the act of 1869-'70, Battle's Revisal, chap. 39,) is not a judicial act. In order to have that character, an act must determine a case in controversy between parties, or be a judgment affecting the title to property.

*Therefore*, the act is not unconstitutional.

The plaintiff in such proceeding can only enforce the lien acquired by the return of the appraisers, by carrying the whole proceeding by writ of *certiorari* into the Superior Court, and obtaining a judgment thereon. The County Commissioners cannot render judgment thereupon.

A Justice of the Peace has no jurisdiction to enforce such lien, where the amount is less than two hundred dollars; his judgments are necessarily personal, and enforceable on all the property of the debtor, and not *in rem*. Such a lien is not a personal debt, but a lien upon the land benefitted, which is the only security therefor.

(The case of *Johnson* v. *Rankin*, 70 N. C. Rep. 550, cited and approved.)

CIVIL ACTION, heard before his Honor Judge *Buxton*, at Chambers, in CUMBERLAND county, Dec. 27th, 1875.

"The plaintiff is a corporation duly created by an act of the General Assembly entitled "An act to amend and re-enact an act to incorporate the Flat Swamp, Lock Creek and Evans Creek Canal Company of Cumberland County." Ratified 13th of Dec. 1871, (Act of 1871-'72, chap. 129, p. 171.)

The plaintiff on the 6th day of October, 1873, made application in writing to the Board of Commissioners of Cumberland county, specifying the charter of a certain canal desired in said petition, which the plaintiff proposed to cut: its general course, extent, heght, depth, width; the amount of fall per mile, the point of begining and terminus, with a description of lands to be affected thereby, together with the names of the owners of such lands; praying the said Board of Commissioners to appoint three disinterested freeholders of said county, not of kin to any of the parties interested, appraisers to assess the benefits and damages to any of such lands incident to said contemplated work. Thereupon the Board of Commissioners appointed David Murphy, J. C. Blocker and W. B. Draugh, to act as appraisers.

On or about the 24th of October, 1873, the plaintiff served upon the defendant a notice of the time and place of meeting of the appraisers, with a description of the said proposed canal. The appraisers met at the time and place named in the notice, and after an examination of all the land in any way liable to be affected by the proposed canal, assessed the benefit to a certain tract of land, containing sixty-five acres and adjoining the land of Devane and others, the property of the defendant, at $195, and returned their assessment with their appraisment thereto appended; that the same was in all respects a true assessment to the best of their judgment and belief, with a description of the lands of the defendant, to the Register's office of said county, which return was thereupon recorded.

On or about the 8th day of May, 1874, the plaintiff finished the canal according to specifications. The plaintiff demanded of the defendant the amount of the assessment levied upon his land more than ten days prior to the institution of this proceeding. No part of the assessment has been paid.

The plaintiff claims that it has a lien on the land of the defendant for the amount of the assessment, by virtue of its charter of incorporation.

FLAT SWAMP, LOOK'S CREEK and EVAN'S CREEK C·N·· C .    A. D. McALISTER.

The defendant claims:

1. That the land has not been benefitted by cutting the canal;

2. That the amount of assessment is too high;

3. That the said lands are a part of his homestead and are not subject to the lien of the plaintiff;

4. That the provisions of the act of incorporation are unconstitutional.

The following questions are submitted to the court for decision:

1. Whether the defendant can now be allowed to contest the question of benefit or no benefit, not having appealed from said assessment?

2. Whether the assessment constitutes a lien upon the land of the defendant?

3. Whether the defendant can claim his homestead exemption in said land paramount to the lien of said assessment?

4. Whether the Superior Court has jurisdiction of the subject matter of this controversy?

5. Whether the act of incorporation of said company is Constitutional?

It is agreed that if the court shall decide the foregoing questions in favor of the plaintiff, then judgment shall be rendered against the defendant for the amount of said assessment, and said judgment shall be declared a lien on the land of the defendant, and for cost. If the court shall decide in favor of the defendant, then judgment shall be rendered against the plaintiff for cost.

Upon the hearing, his Honor gave judgment in favor of the plaintiff, and thereupon the defendant appealed.

*G. M. Rose*, for appellant.
*McRae* and *Broadfoot*, contra.

RODMAN, J.  The defendant contends that the Act of

11

1871–'72, chap. 129, which refers to and incorporates in itself the first eleven sections of the Act of 1869–'70, chap. 137, (found in Battle's Revisal, chap. 39), is unconstitutional, because it attempts to give judicial powers to the County Commissioners. The argument, we may suppose, would be this: The Constitution requires that the judicial, executive and legislative powers shall be kept separate. It vests the judicial power in the Supreme and Superior Courts, and in Justices of the Peace. The power to act on a petition from persons wishing to drain their flat lands through the lands of other persons; to appoint appraisers to assess the damages and benefits which all persons affected by a proposed canal will receive; and to give judgment in favor of the applicant against the owners of land affected, for the amount of the benefits they are considered to have received, which shall be a lien on the land, is in its nature a judicial power which can be exercised only by the courts. The only part of this argument which can be disputed, is that which asserts the power to appoint appraisers, &c., to be exclusively and necessarily a judicial one. The question is new. Probably the constitutions of all the States contain in some shape the principle that the judicial and other powers of the government shall be kept separate. It is certain, that in many cases, such powers as are given to County Commissioners by the acts cited, have been given to bodies not judicial. Yet I have not seen any case in which objection is taken upon the ground taken here. Judge Cooley in his work on Constitutional Limitations, at page 98 *et seq.*, attempts to define legislative from judicial power. Neither his opinions nor his authorities touch the special question before us.

In *Rice* v. *Barkman*, 16 Mass. 326, the court held that an act of the Legislature authorizing the father of certain infants to sell their lands and hold it as their guardian, was not an exercise of judicial power.

The court said in substance, that because a power was

usually delegated to courts, it was not thereby necessarily and exclusively judicial. An act to have that character must determine a case in controversy between parties, or be a judgment affecting the title to property. In none but the exact sciences do words have a perfectly precise and unchangeable meaning.

In construing written laws, the words unless they are clearly technical and thus have a definite meaning, must be considered as somewhat elastic, or else the different parts of the law are liable to clash and its working will be found impracticable, like all machines whose parts are so closely adjusted as to permit no play or lubrication. We are of opinion that a power to appoint appraisers to assess the benefits to lands affected by a canal is not exclusively judicial, and that the act in question is not unconstitutional upon that account. A similar power in numerous instances is exercised by bodies not judicial, though in all cases their proceedings may be brought before the courts for review by proper proceedings for that purpose.

For instance : The county commissioners may issue an order to a Sheriff to summon a jury to lay off a public road and assess damages to persons injured thereby. It is true the Constitution gives to the County Commissioners a general supervision over roads, Art. VII, sec. 2, so that the instance is not strictly analogous. In the charter of the town of Asheville, considered in the case of *Johnson* v. *Rankin*, 70 N. C. Rep. 550, authority is given to the Mayor of the town to issue his warrant to the sheriff requiring him to summon commissioners to assess damages by reason of extending the streets. The objection to the act as unconstitutional for this reason did not occur to the learned counsel for the defendant or to the court. Probably there are many charters with similar provisions both before and since the adoption of the Constitution of 1868. The valuation of land for taxation has never been considered a judicial act, although if the valuers proceed

on wrong principles, their proceedings may be reversed in the courts.

We cannot readily conceive the policy of the Legislature in thus, in a single and special class of cases, taking away from the courts the jurisdiction of the iniatory proceedings which they have always heretofore had, and giving it to a body which we may suppose to be less fit for it, and which cannot have power to give an ultimate judgment and enforce it by execution; especially when there were two statutes, viz: chap. 40 of the Revised Code, and chap. 164 of the acts ot 1868–'69, upon the same subject, which were not repealed, but left in force, under which all the objects apparently contemplated by the act of 1869–'70, except that of giving jurisdiction of the iniatory proceedings to the county commissioners, could have been effected.    These acts cannot be considered as repealed because they were overlooked and are not included in Battle's Revisal.    Nevertheless, whatever the legislative policy may have been, it is our duty to give effect to every act of the Legislature not clearly inconsistent with the Constitution.

2. We are next called on to consider the force and effect of the appraiser's return in fixing the defendant with liability for the sum assessed against him.

It follows from the conclusion, that the county commissioners had jurisdiction to appoint the appraisers and to receive their return ; that if the proceedings were in all respects legal and regular, the assessment is conclusive, unless the defendant in due time, by appeal or *certiorari*, shall bring the proceeding into the Superior Court for revision.    It does not follow, however, that the county commissioners could give a judgment against the defendant for the sum assessed against him, or enforce it by execution.    The giving of a judgment to affect property or rights is as we have seen, a judicial act, and it is therefore beyond the power of the county commissioners.    The plaintiff can only enforce his demand by bring-

ing the whole proceedingf into tbe Superior Court by a *certiorari* and obtaining judgment there.

It is said for the defendant that as the principal sum demanded is less than $200, a recovery can be had before a Justice of the Peace, and in his court only. But a Justice has jurisdiction of actions founded on contract only. His judgments are necessarily personal, and enforceable on all the property of the debtor, and not *in rem*. Now although the assessment may, in some sense and for some purposes, be regarded as creating a debt, and even a debt by contract, yet it is not a personal debt to be enforced out of the general property of the debtor, but merely a lien upon the land benefitted, which is the only security for its payment. Hence a Justice has not jurisdiction of such a claim as this.

The act of March 26, 1870, by referring to sec. 11, of chap. 39, Bat. Rev., gives an appeal to the Superior Court to any person aggrieved by the proceedings of appraisers, "upon giving bond and within the time, as in cases of appeal from Justices of the Peace." It is of course true that if a person aggrieved has lost his appeal without default on his part, he is entitled to a *certiorari*. In this case the defendant did not appeal, nor has he asked for a *certiorari*. The present case is made under C. C. P., sec. 213, the parties having agreed to certain facts, upon which they ask the judgment of the court. We take it to be, by agreement, a proceeding intended as a substitute for an appeal or *certiorari*, by which the whole proceedings of the County Commissioners and of the appraisers would be brought into the Superior Court for review upon errors assigned. In the present case, however, those proceedings are not set forth in full, or with such particularity as will enable us to say whether there was error in them, or not. We are not informed on what rule the appraisers acted; whether they assessed the benefits which the defendant would or did receive, or whether they assessed upon him his proportion of the cost of the work according to the benefits he re-

ceived, as compared with the benefits received by others, which seems to be the rule contemplated by the act, sec. 11. It seems to have been the intention of the parties to present these questions, but they cannot be presented unless all the proceedings, under which the liability is alleged to have arisen, are set forth.

The question whether the defendant can claim his homestead against the assessment, does not at present arise.

Any question which the defendant may be disposed to make upon the constitutionality of the act of 1871–'72, other than the one we have considered, may be made on the return of the *certiorari*. Any consideration of it, by anticipation, would be premature.

We think we will best promote the intention of the parties, and enable them to present the points in controversy, so that they may be fairly adjusted by a decree to the following effect:

The case is remanded to the end that the proceedings may be amended as the partios may be advised, and either party shall have liberty to move for a *certiorari* to the County Commissioners of Cumberland requiring them to certify to the Superior Court of that county all the proceedings in the matter of the Flat Swamp, &c., Co. against McAllister and others, and, on the return thereof, the parties may move as they may be advised.

Each party will pay his own costs in this court.

Let this opinion and decree be certified, &c.

PER CURIAM.                                    Judgment accordingly.